## Tyldsley Estate

*Leonard Turner*, for accountant.

*Judith J. Jamison*, for Commonwealth.

KLEIN, P. J., March 22, 1962.—Elsie M. Tyldsley, also known as Elsie May Tyldsley, died on December 8, 1960, unmarried and without issue, leaving to survive her, according to the statement of proposed distribution, no known heirs, and leaving a will which was admitted to probate on January 16, 1961, when letters of administration c. t. a. were granted. Proof of advertisement of notice thereof was produced to the auditing judge.

The will of the testatrix is a holographic instrument and reads as follows:

"Elsie Tyldsley—4904 Benner St., City of Phila., Penna., being of sound mind and understanding, make this my last will and testament, do give & bequeath to my dear friend Gertie (Mrs. Wm. Richardson, 4540 N. Uber St., City of Phila., Pa. my entire home to do with as she sees fit."

A copy of the will, certified by counsel to be a true copy, is annexed hereto.

The will of testatrix did not dispose of her residuary estate and she is therefore deemed to have died intestate with respect thereto, in accordance with the provisions of section 1 of the Intestate Act of 1947. (Act of April 24, 1947, P. L. 80).

Counsel for the accountant submitted at the audit, in accordance with the provisions of Rule of Court 69.4, a report with respect to his efforts to ascertain next of kin of decedent. The report states that decedent at the time of her death was a childless widow of about 77 years of age. It is further stated that in May, 1960, decedent made application to the Philadelphia German Protestant Home for the Aged, 700 Gilham Street, Philadelphia, for admission to the home and her name was placed on the waiting list. The application for admission to the said home is stated to have had a section marked "Relatives" which had been crossed out, apparently by decedent, and the words "Friend— Mrs. Wm. Richardson" were inserted. According to the report, the pastor of the church which decedent attended and the officers of Good Intent Council No. 187, Sons and Daughters of Liberty, of which she was a member, were unable to supply any information with respect to decedent's relatives. As a result of newspaper advertisements, Catherine Hill, a sister of decedent's deceased husband, was located. The said Catherine Hill is stated to have advised counsel that she had been very close to decedent and her husband all her life, but that as far as she knew decedent had no relatives of any kind. The report further states that Hazel Laucher Lennon, Lafayette Hill, Pa., "claimed relationship to the decedent but her information could not be tied in with our decedent and even if so she would not inherit as she would be a second cousin or a third cousin." It is further stated that Mar-

garet Birch of Philadelphia claimed that she was a second cousin of decedent, and that her information as to decedent's family history was contrary to all other information that could be obtained.

At the audit Mrs. Jamison, Special Assistant Attorney General, representing the Commonwealth of Pennsylvania, entered an appearance claiming the balance of principal and income, to be paid into the State Treasury, without escheat, pursuant to section 1314 of the Fiscal Code of April 9, 1929, P. L. 343.

An examination of the account discloses that the personal property, having a value of $1,825.16, is made up in the following manner:

Cash in estate checking account in
    Provident Tradesmens Bank and
        Trust Company        $1,615.16
1 lady's brooch—inventory value      25.00
1 lady's diamond ring—inventory value    35.00
Household furniture—inventory value    150.00

The property not disposed of by decedent's will descends to the Commonwealth under sections 1 and 3(6) of the Intestate Act of 1947, and is subject to the operation and effect of the provisions of section 12 of the same act as added February 10, 1956, P. L. (1955) 1037, 20 PS §1.12, which provides:

"When the estate is distributable to the Commonwealth, as statutory heir under the provisions of this act, *it shall be reduced to cash in all cases by the personal representative*, and awarded by the court in distribution to the Commonwealth, and paid by the personal representative through the Department of Revenue into the State Treasury." (Italics supplied.)

It is therefore clear that under the provisions of the statute, the auditing judge has no authority to make the award as requested. The items of jewelry and household furniture must be sold by the administrator and reduced to cash before an award can be made.

In Rhodes Estate, 71 D. & C. 330 (1950) we said at page 342:

"Prior to the enactment of this act, tangible property, both real and personal, was often awarded to the Commonwealth in kind, as custodian without escheat, with no clear responsibility or authority vested in anyone with respect to its maintenance or disposal. Real property was often vandalized and depreciated in value because of lack of attention. The Fiscal Code of April 9, 1929, was amended on May 9, 1949, P. L. 1013, to enable the State authorities to dispose of such accumulated property and convert it into cash. Section 12 was adopted primarily to avoid the reoccurrence of such situations."

The accountant is accordingly directed to sell the unconverted personal property, either at public or private sale, as shall meet with the approval of the Attorney General in compliance with the provisions of section 12 of the Intestate Act, quoted above, and reflect the results of such sale in the schedule of distribution, which shall be directed to be filed, so that distribution to the Commonwealth will be made entirely in cash as directed by the Act. . . .

And now, March 22, 1962, the account is confirmed nisi.